


# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE GENERAL AMERICAN LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff and Counter-defendant, | § § | |
| v. | § § | CIVIL ACTION NO. 3:96-CV-3253-L |
| MARY JO HOLTER RAUSCH, | § § § | |
| Defendant and Counter-plaintiff. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiff's Motion for Summary Judgment, and Defendant/Counter-plaintiff's Motion for Partial Summary Judgment, both filed February 2, 1998. The court has carefully considered the motions, responses, replies, the record evidence, and the applicable law. For the reasons stated below, Plaintiff's Motion for Summary Judgment is **granted in part**, and **denied in part**, and Defendant's Objections to Plaintiff's Evidence Offered in Support of its Motion for Summary Judgment are **denied as moot**. Defendant/Counter-plaintiff's Motion for Partial Summary Judgment is **denied**.

### I. Factual and Procedural Background

Defendant and Counter-plaintiff Mary Jo Rausch ("Rausch") worked as a legal secretary and administrative assistant at a Dallas law firm (the "Law Firm") from 1985 through 1994. In 1990 Rausch applied for a Professional/Executive Disability Income Insurance Policy ("Policy") through Plaintiff and Counter-defendant General American Life Insurance Company ("General American"). On her policy application, Rausch stated that 80% of her time was spent on administrative duties,

20% in travel, and 0% on manual tasks. General American issued the Policy to Rausch effective October 29, 1990.

The Policy provides that in the event of total disability (as defined by the Policy) Rausch would be entitled to $2,000 per month in benefits, as well as certain cost of living adjustments. Two riders attached to the policy are important to this case. First, the Own Occupation Rider changes the definitions of "total disability" and "totally disabled" that are found in the main policy. The Own Occupation Rider provides that

> Total Disability and Totally Disabled mean that, as a result of Sickness or injury or a combination of both, you are unable to perform the material and substantial duties of your Regular Occupation.
>
> You must be under the regular care of a Physician, other than yourself, unless you furnish proof satisfactory to us that future or continued care would be of no benefit.

The Own Occupation Rider further defines "Regular Occupation" to mean "your usual occupation when Total Disability begins."

The second rider affecting the disposition of this case is the Proportionate Income Replacement Rider. This rider applies in situations where the policyholder is partially rather than totally disabled. The Proportionate Income Replacement Rider states:

> Partial Disability and Partially Disabled mean that while you are Disabled from Sickness or Injury, or a combination of both, either in your Regular Occupation or another occupation:
>
> 1   are working, but, solely as a result of such Disability, you are unable to earn at A rate of at least 80% of your Prior Earned Income; or
>
> 2   during the Waiting Period and during the first 6 months benefits are payable, you are working, but, solely as a result of such Disability

2

ClibPDF - www.fastio.com

> a) you are unable to perform all of the substantial and material duties which accounted for at least 20% of the time you spent in your Regular Occupation prior to your Disability; or
>
> b) you are able to perform all the substantial and material duties of your Regular Occupation, but for 80%, or less, of the time you formerly spent prior to your Disability; and
>
> 3. you are under the regular care of a Physician, other than yourself, unless you furnish proof satisfactory to us that future or continued care would be of no benefit to you.

The Proportionate Income Replacement Rider also defines "Regular Occupation" as "your usual occupation when Disability begins."

Rausch's job at the Law Firm included various secretarial and administrative duties, including document typing and preparation, answering phones, organizing meetings, and sorting and distributing mail. In 1994, Rausch voluntarily left her job at the Law Firm because she was engaged to be married and had plans to travel with her fiancé. By February 1995, however, Rausch had broken her engagement and decided to look for a new job. Through a placement agency, Rausch obtained temporary assignments with three different companies outside the legal field. The third company, Haas, Wheat & Partners ("Haas Wheat"), initially hired Rausch as a temporary receptionist. This job involved answering the telephone, greeting visitors, and taking messages. Haas Wheat eventually offered Rausch a full-time position as a receptionist in June 1995. Rausch accepted this offer and was scheduled to begin her new job after the July 4th holiday that year. In the interim, however, Haas Wheat withdrew the offer after deciding it no longer had an available position.

3

After the Haas Wheat offer fell through, Rausch continued to apply for employment elsewhere. In July 1995, she applied with two other placement firms, stating on her applications that she was seeking the position of "Executive Assistant." To Rausch, an "Executive Assistant" did everything she did at the Law Firm and more. Rausch sought more responsibility and more income than she had at the Law Firm, hoping for a job that would be more challenging, including learning new computer programs. Also in July 1995, Rausch applied to Legal Network, a company that places employees primarily in the legal area.

On August 12, 1995 Rausch fell and injured her right elbow, right wrist, and both knees while traveling in London. On August 22, 1995 Rausch had surgery on her arm. Dr. Sean O'Driscoll, her treating physician, diagnosed her as having "[d]ecompressed right radial head fractures" of the right elbow. Dr. O'Driscoll stated that Rausch was totally disabled from August 22, 1995 through September 25, 1995, and that partial disability began on September 26, 1995. Rausch was treated by Dr. O'Driscoll through October 29, 1996. On the last treatment date, Dr. O'Driscoll advised Rausch that "nothing further in terms of improvement should be expected."

Rausch made her initial claim for benefits under the Policy on November 2, 1995. On her claim form, Rausch listed her occupation as "Legal Assistant/Office Administration," and did not inform General American that she had not worked in the legal field for the year prior to her injury. Rausch further stated that as a result of her injury she could no longer 1) type on a computer 5-30 hours per week; 2) do filing 5-30 hours per week; 3) perform handwriting tasks; and 4) perform "multiple normal office tasks" such as using adding machines, postage machines, holding the phone, and picking up the phone. Furthermore, in her deposition Rausch testified that because of her injury she cannot work overtime, type 80 words per minute for five hours straight, do heavy keyboard work

4

on a continuous basis, sort and distribute a high volume of mail, transcribe dictation tapes for very long or very fast, prepare mass mailings, or perform work with a rapid turnaround time. Believing that Rausch had been working full time as a legal secretary as of August 1995, General American paid Rausch partial disability benefits from December 20, 1995 through October 14, 1996.

In October 1995, Rausch began taking real estate certification classes. In December 1995, Legal Network placed Rausch as a temporary legal secretary at the law firm of Thompson & Knight ("T&K"). Rausch worked approximately 27 hours at T&K during the week she was placed there. Rausch became a real estate agent in March 1996 and has worked as a real estate agent since then. As a real estate agent Rausch's job duties involve operating computers, preparing and sending mailings, handling phones, previewing homes, and conducting open houses. While Rausch sometimes has problems twisting doorknobs and getting in and out of houses, her injured arm presents no problems in performing her duties as a real estate agent.

In June or July 1996 General American obtained a report of Rausch's earnings from the Social Security Administration. The report showed that Rausch had earned less than $4,000 in 1995. For this reason, General American began to question what Rausch's activities were prior to her accident. General American scheduled a field interview by its representative, John Klinger ("Klinger").

Klinger and Rausch met on August 9, 1996. During the interview Rausch confirmed that she had not worked much in 1995 because she was engaged to marry a millionaire and did not have to work. Rausch did not mention that she had accepted employment as a receptionist and had actually worked as a legal secretary at T&K. In his report, Klinger noted that Rausch was not working at the time of her injury and concluded that Rausch's career change may not have been caused by her

5

injury and that she might have decided to become a real estate agent regardless of her injury. Klinger further recommended that General American require Rausch to undergo an independent medical exam ("IME"). At around this same time, General American obtained a written job description for Rausch's position at the Law Firm. General American also wrote to Rausch and asked her to identify the prospective employers she either had interviewed with or planned to interview with at the time of her accident. Rausch did not provide this information to General American.

On October 14, 1996 Dr. Philip Hansen examined Rausch at General American's request. Dr. Hansen concluded that Rausch's injuries "do not prevent activities of daily living but may be associated with pain of daily living." At his deposition, Dr. Hansen also reviewed the claim form Rausch initially submitted to General American. Based upon the way Rausch described her job duties on that form, Hansen testified that Rausch was totally disabled. Dr. Hansen was also presented with Rausch's job description from her position at the Law Firm. Dr. Hansen testified that Rausch would be able to do all of the duties listed in the Law Firm's description, at least to a limited extent.

Dr. O'Driscoll, Rausch's treating physician, expressly declined to give any opinion regarding whether Rausch would fit under the definitions of disability found in the Policy. He did testify, however, that Rausch would always have a "slight disability" due to her arm injury, and further stated his opinion that the injury more likely would not prevent Rausch from performing secretarial work, albeit with some pain.

After receiving Drs. Hansen and O'Driscoll's medical records and reports pertaining to Rausch, General American forwarded them to its medical consultant, Dr. Bianchi. Dr. Bianchi

6

concluded that Rausch was "'minimally if at all impaired in her occupation' - her occupation being either a legal administrative assistant or voluntarily unemployed."

On December 2, 1996 General American wrote to Rausch concerning its investigation of her claim. General American told Rausch that because she had recovered from her injury with "minimal residual functional restrictions," which would not preclude her from performing the duties of her occupation, her loss of income was not due to her injury but rather her decision to embark on a career in real estate; therefore, Rausch was not entitled to benefits under the Policy. On December 3, 1996 General American filed this declaratory judgment action against Rausch due to the unresolved questions related to her claim. Rausch has counterclaimed for breach of contract, anticipatory repudiation, bad faith, and under Art. 21.21 of the Texas Insurance Code. She also seeks her attorneys' fees. Rausch has moved for summary judgment on her breach of contract claim. General American has also moved for summary judgment and seeks a complete dismissal of Rausch's claims.

## II. Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual

7

record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support Plaintiff's opposition to Defendants' motion. *Id.*, *Skotak v. Tenneco Resins Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

8

## III. General American's Motion for Summary Judgment

General American contends that there is no genuine issue of material fact present in the record with respect to any of Rausch's claims, and therefore it is entitled to judgment as a matter of law. Each claim will be analyzed separately below.

### A. Breach of Contract

General American contends that it is entitled to summary judgment on Rausch's contractual claim because the language of the Policy is unambiguous, and therefore Rausch is not entitled to benefits under the Policy. Under Texas law, insurance policies are interpreted and construed according to the rules of construction generally applicable to contracts. *Cicciarella v. Amica Mutual Ins. Co.*, 66 F.3d 764, 767-68 (5th Cir. 1995); *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). The court's primary concern is to give effect to the intentions of the parties as expressed in the written agreement. *Cicciarella*, 66 F.3d at 768; *Gulf Chemical*, 1 F.3d at 369. When interpreting an insurance policy, the court shall construe all parts of the document together. *Cicciarella*, 66 F.3d at 768, *citing Travelers Indem. Co. of Rhode Island v. Lucas*, 678 S.W.2d 732, 734 (Tex. App. – Texarkana 1984, no writ).

In this case, the parties agree that to be considered totally disabled under the Policy, an insured must be "unable to perform the material and substantial duties of [their] Regular Occupation." The parties further agree that the "material and substantial" duties of a job are "those functions of a person's employment that they would be doing on a regular consistent basis for the greater portion of their time."[1] General American and Rausch disagree, however, whether one must

---

[1] Deposition of AnneMarie Klein ("Klein Depo.") at p. 38.

9

be unable to perform *all* material and substantial duties to be totally disabled, or if inability to perform *some* or even *one* material and substantial duty would render a policyholder totally disabled within the meaning of this definition.

General American contends that unless Rausch is completely unable to do *all* of the material and substantial duties of her Regular Occupation, she is at most partially disabled under the Policy. Conversely, Rausch urges that inability to do one or more of the material and substantial duties of her Regular Occupation makes her totally disabled as defined by the Policy. The relevant language in the Policy states that the insured must be "unable to perform the material and substantial duties" of her Regular Occupation. Because "duties" is plural and is not qualified by a phrase such as "one or more," or "some of," the court agrees with General American. The use of the word "duties" means that the insured must be unable to perform the "material and substantial duties" as a whole, meaning inability to perform all material and substantial duties.

This interpretation of Total Disability is consistent with the definition of Partial Disability found in the Policy. Under subsection 2(a) of this definition, a policyholder is Partially Disabled if she is working, but is unable to perform *all* of the substantial and material duties which accounted for at least 20 % of the time spent in her Regular Occupation prior to the disability. Similarly, subsection 2(b) of the same definition states that an insured is Partially Disabled when she is able to perform *all* the substantial and material duties of her Regular Occupation, but for 80% or less of the time formerly spent on these duties prior to the disability. To read the definition of Total Disability according to Rausch's interpretation would be inconsistent with these definitions.

The next issue relevant to Rausch's contractual claim concerns her "Regular Occupation" at the time of her accident. The Policy defines "Regular Occupation" as "your usual occupation

10

when Total Disability begins." The Policy does not define "usual occupation", but General American's representative testified that it means "what they were doing, what their job was, what their responsibilities at their place of employment were on a regular basis at the time of disability."[2] The claims examiner who investigated Rausch's claim testified that if Rausch were unemployed at the time of her disability, General American would look at the type of job she was seeking for purposes of defining her usual occupation.[3]

It is undisputed that Rausch left her job at the Law Firm approximately a year before the accident, did not work for much of that year (although she did some temporary work) and was looking for a job at the time of the accident. Rausch maintains that she was looking for a secretarial job requiring heavy typing and data entry, and that her duties at her temporary assignments involved mainly typing. Meanwhile General American argues that since she had left the Law Firm looking for a change, was interested in becoming an Administrative Assistant, and at one point had accepted a position as a receptionist, her Regular Occupation was not that of a secretary or typist. Taking Rausch's testimony as true, there is a genuine issue of material fact regarding her usual occupation and the material and substantial duties thereof. Until these questions are answered it cannot be determined whether Rausch is either totally or partially disabled under the terms of the Policy. For these reasons, Rausch's breach of contract claim survives summary judgment.

---

[2] *Id.* at p. 56.

[3] Deposition of Shannon O'Leary ("O'Leary Depo.") at pp. 45, 48.

### B. **Repudiation**

Texas law defines repudiation as the refusal to perform a contract before the time of performance has arrived. *Murray v. Crest Construction, Inc.*, 900 S.W.2d 342, 344 (Tex. 1995). Upon repudiation or anticipatory breach, the injured party is immediately permitted to pursue a cause of action for damages. *Id.* Repudiation is shown by words or conduct that show "'a fixed intention to abandon, renounce and refuse to perform the contract.'" *Panasonic Co. v Zinn*, 903 F.2d 1039, 1042 (5th Cir. 1990), *quoting Hauglum v. Durst*, 769 S.W.2d 646, 651 (Tex. App. – Corpus Christi 1989, no writ). When the parties are not in agreement regarding how the contract should be interpreted, one party's refusal to comply with the other's interpretation does not constitute a repudiation of the contract. *P&L Contractors, Inc. v. American Norit Co., Inc.*, 5 F.3d 133, 139 (5th Cir. 1993). To be a repudiation, a refusal to perform the contract under *any* interpretation must be firmly expressed. *Id.* (Emphasis added).

Here it is undisputed that General American began paying benefits to Rausch upon receipt of her claim. Eventually it discontinued the benefits when it began to question Rausch's activities between the time she left the Law Firm and her accident, and Rausch did not provide the information requested by General American. Although the parties clearly disagree whether Rausch is entitled to receive benefits under the Policy, Rausch has set forth no summary judgment evidence indicating that General American has refused to perform under *any* interpretation of the Policy. General American is entitled to summary judgment on Rausch's repudiation claim.

### C. **Bad Faith**

General American maintains that it is not liable to Rausch for breach of its duty of good faith. An insurer breaches its duty of good faith and fair dealing by failing to settle a claim when

12

the insurer knew or should have known that it was reasonably clear the claim was covered. *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997). An insurer's liability for the tort of bad faith is distinct from its liability under its insurance contract. *Lyons v. Millers Casualty Ins. Co. of Texas*, 866 S.W.2d 597, 600 (Tex. 1993). Insurance carriers retain the right to deny questionable claims without being liable for bad faith, even if the insured's loss is ultimately found to be covered under the policy. *Id.*; *Higginbotham v. State Farm Mutual Automobile Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). Thus, the issue of bad faith centers not on whether the claim was valid but whether the insurer's conduct was reasonable in rejecting the claim. *Id.* at 601. To prevail on a bad faith claim, "the insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim." *Higginbotham*, 103 F.3d at 459, citing *State Farm Lloyds Inc v. Polasek*, 847 S.W.2d 279, 284 (Tex. App. San Antonio 1992, writ denied). As long as the insurer has a reasonable basis for denying or delaying payment of a claim, it will not be subject to bad faith liability. *Id.*; *Lyons*, 866 S.W.2d at 600.

Rausch responds that General American acted in bad faith by failing to settle Rausch's claim "despite evidence that she qualifies for total disability benefits under the Policy."[4] She further contends that her bad faith claim is supported by General American's "shoddy" investigation of her claim and Dr. Hansen's deposition testimony that Rausch is totally disabled within the definition provided in the Policy.[5] Several undisputed facts in this case show that coverage under the policy

---

[4] Defendant/Counter-Plaintiff's Response to Plaintiff's Motion for Summary Judgment ("Rausch's Response") at p. 24.

[5] *Id.* Rausch is correct that Hansen testified she was totally disabled when presented with the information in Rausch's initial claim form, however, when presented with Rausch's job description from the

13

was not reasonably clear when General American decided to suspend Rausch's benefits. For example, the evidence shows that Rausch was on several occasions vague or unresponsive regarding her employment activities between her resignation from the Law Firm and her accident, and had not worked at all for the greater portion of the year preceding the accident. She also did not inform General American that she was unemployed at the time of her claim, and in fact gave General American the distinct impression that she was working 40 hours per week in the legal field as of the date of her injury. Finally, when she applied for the Policy, Rausch stated that her tasks were primarily administrative, with no time spent on manual work. In short, General American had multiple reasons to question Rausch's claim. Coverage under the Policy was not reasonably clear when it made the decision to discontinue her benefits and file this declaratory judgment action. That Rausch disagrees with General American's decision not to pay further benefits is insufficient to establish a material fact issue regarding her claim of bad faith. The court finds, for the reasons stated, that General American had a reasonable basis in denying further payment of benefits to Rausch. Because General American acted with a reasonable basis in denying further payment of benefits under the Policy, it is entitled to summary judgment on Rausch's bad faith claim.

D. **Texas Insurance Code Art. 21.21**

Finally, General American requests summary judgment on Rausch's claim pursuant to Tex. Ins. Code Art. 21.21. General American contends that it is entitled to summary judgment on this claim because 1) Rausch did not provide notice of, and has failed to plead or prove, any specific

---

Law Firm, Hansen's testimony was that Rausch would be able to perform all the job duties described, at least to a limited extent. Oral Deposition of Philip E. Hansen, M.D ("Hansen Depo.") at pp. 22-29, 31-33, and 41-44.

14

misrepresentations by General American; 2) Rausch did not rely on any alleged misrepresentations; 3) no damages other than loss of benefits were caused by the alleged misrepresentations; and 4) any alleged misrepresentations made at the time Rausch bought the policy are time-barred.[6]

Rausch responds that her Article 21.21 claims are based upon General American's alleged unfair settlement practices and do not depend upon any misrepresentation made by General American at the time she purchased the policy. The only summary judgment evidence Rausch offers in support of these claims concerns settlement negotiations that took place between the parties in March - April 1996 and January - February 1997, as well as evidence showing that Rausch did not receive a reservation of rights letter from General American until over a year after she submitted her disability claim. While Rausch complains of other alleged actions of General American with respect to this claim, these allegations are presented in a conclusory fashion with no evidentiary support.[7]

As is discussed above, the record reflects that coverage under the Policy was not reasonably clear, and that General American did not act in bad faith when it questioned coverage. Moreover, Rausch's own conduct in connection with the submission of her claim and her failure to provide General American with information it requested when investigating her claim only contributed to General American's difficulty in confirming or denying coverage. General American conducted its investigation beginning in August 1996 and presented Rausch with its opinion that she did not have coverage within a reasonable time, in early December 1996. Therefore, Rausch cannot maintain her claim for unfair settlement practices pursuant to Tex. Ins. Code Art. 21.21. *See Giles*, 950 S.W.2d

---

[6] Plaintiff's Motion for Summary Judgment ("General American's Motion") at p. 22

[7] Rausch's Response at pp. 22-23. The court is not obligated to search the summary judgment record for evidence supporting Rausch's claims *Ragas*, 136 F.3d at 458

15

at 55 (unifying common law and statutory standards for bad faith) For these reasons, General American is entitled to summary judgment on Rausch's Art. 21.21 claims.

### IV. Rausch's Objections to General American's Summary Judgment Evidence

Rausch has lodged several objections to certain deposition exhibits and other evidence relied on by General American. The court's analysis of the issues does not depend on the information in any of the contested documents; therefore, Rausch's objections are **denied as moot**.

### V. Rausch's Motion for Summary Judgment

Rausch has moved for summary judgment on liability on her breach of contract claim. For the reasons stated above with respect to General American's motion on the contractual claim, this motion is hereby **denied**.

### VI. Conclusion

For the reasons previously stated, Plaintiff's Motion for Summary Judgment is **granted in part**, and **denied in part**. The motion is granted with respect to Defendant's counterclaims for bad faith, repudiation, and pursuant to Tex. Ins. Code Art. 21.21. Defendant's counterclaim for breach of contract remains for trial. Defendant/Counter-plaintiff's Motion for Partial Summary Judgment is **denied**.

It is so ordered this 5th day of November, 1999.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge